# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JAMIE CAROLE DAVIS,

      Petitioner,

v.                                          Case No. 8:17-cv-106-KKM-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Jamie Carole Davis, a Florida prisoner, filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging her state conviction for second-degree murder and her life sentence based on alleged failures of her trial counsel. Doc. 1. Subsequently, she filed an amended petition. Doc. 5. Respondent filed a response in opposition to the amended petition, Doc. 13, to which Petitioner replied, Doc. 18. After Petitioner was appointed counsel, Doc. 35, counsel filed a memorandum, Doc. 41, and appendix, Doc. 42, in support of the amended petition. Respondent filed a response to the memorandum, Doc. 43. Upon consideration of the submissions of the parties, the record, and the relevant law, the amended petition is denied. Furthermore, a certificate of appealability is not warranted.

## I.      BACKGROUND

1

a. **Procedural History**

The State of Florida charged Petitioner with second-degree murder after shooting and killing Christina Marie Tuzzolino. Respondent's Ex. 1, Vol. I at 20–21.[1] A jury found Petitioner guilty as charged, and in the verdict, the jury specifically found that during commission of the offense, Petitioner possessed and discharged a firearm, which caused the death of or great bodily harm to Tuzzolino. *Id.*, Vol. II at 302. The trial court sentenced Petitioner to life in prison. *Id.*, Vol. II at 335–41. The state appellate court affirmed per curiam the conviction and sentence on appeal. Respondent's Ex. 5.

Petitioner filed a postconviction motion under Florida Rule of Criminal Procedure 3.850, alleging three grounds of ineffective assistance of trial counsel. Respondent's Ex. 7. After the motion was dismissed with leave to amend, Respondent's Ex. 8, Petitioner filed her amended Rule 3.850 motion alleging the same three ineffective assistance claims. Respondent's Ex. 9. The state postconviction court denied Ground Two of the amended motion and directed the State to respond to Grounds One and Three. Respondent's Ex. 10. After the State responded, Respondent's Ex. 11, the state postconviction court denied the two remaining grounds, Respondent's Ex. 12.

---

[1] Petitioner also was charged with possession of methamphetamine and possession of drug paraphernalia. Respondent's Ex. 1, Vol. I at 20–21. Those charges were dismissed by the State. *Id.*, Vol. II at 334.

Case 8:17-cv-00106-KKM-AAS   Document 46   Filed 03/31/21   Page 3 of 26 PageID 250

Petitioner filed a motion for rehearing, Respondent's Ex. 13, which the state postconviction court denied, Respondent's Ex. 14. The denial of Petitioner's amended Rule 3.850 motion was affirmed per curiam on appeal. Respondent's Ex. 16. Petitioner then filed another motion for rehearing, Respondent's Ex. 17, which was subsequently denied, Respondent's Ex. 18.

On January 13, 2017, Petitioner timely filed a petition under § 2254 in this Court, Doc. 1, which she amended on February 3, 2017, Doc. 5, alleging the three grounds of ineffective assistance of trial counsel that she presented to the state courts.

### b. Factual Background[2]

Danny Beckner and Petitioner had dated for approximately nineteen years at the time of the shooting and have six children together. Respondent's Ex. 2, Vol. III at 403. On the evening of August 7, 2010, and into the morning of August 8, 2010, Beckner and Tuzzolino were at a motel together. *Id.*, Vol. I at 126. They drove back to Beckner and Petitioner's house in Beckner's truck. *Id.*, Vol. II at 352. Petitioner met them in the driveway with a gun. *Id.* After some argument between Petitioner and Tuzzolino, the gun discharged, and Petitioner shot Tuzzolino. *Id.*, Vol. III at 434–40. At trial, the State asserted that Petitioner intentionally shot Tuzzolino. *Id.* at 521. Petitioner asserted that the gun unintentionally discharged. *Id.* at 440.

---

[2] The factual background is based on the trial transcript and appellate briefs.

3

### i.  The State's Evidence at Trial

At trial, witnesses called by the State testified that Beckner's truck was parked in the driveway and the driver's side door of the truck was open. *Id.* at 133, 175, 231. Riley Thomas, Petitioner's neighbor, testified that she saw Beckner and Petitioner outside of their residence and overheard "yelling." *Id.* at 132–33. Thomas observed Petitioner "standing on the porch" and saw that Petitioner had a gun when she walked down the stairs. *Id.* at 133–34. Thomas testified that Petitioner walked from the porch to the "driver's side of the truck where the door was open" and "fired" once, "pointing [the gun] into the truck." *Id.* at 134–35. She testified that after the gunshot, a woman "jumped out [of] the truck and started running." *Id.* at 135. The woman collapsed at the neighbor's house. *Id.* at 136. Thomas denied that it looked like there was any kind of struggle going on when Petitioner fired the gun and testified that Petitioner was "completely outside of the truck cab." *Id.* at 136.

A Polk County Sheriff's deputy who spoke with Petitioner immediately after the shooting testified that Petitioner told him she fired the gun when Tuzzolino "made a jabbing motion" toward her. *Id.* at 151. A detective testified that Petitioner indicated that the gun accidentally discharged after Tuzzolini lunged at Petitioner. *Id.* at 184. The medical examiner testified that Tuzzolini died of a gunshot wound and that the gunshot was fired from "less than six inches [away] but probably much closer." *Id.* at 165–68.

### ii.  The Defense's Evidence at Trial

Testifying on behalf of the defense, Brian Otstot, Petitioner's neighbor recounted that after Beckner's truck pulled up, he saw Petitioner walk down the porch stairs with a gun. *Id.* at 352–53. Beckner exited the truck while a female stayed in it. *Id.* at 353. Otstot testified that Petitioner walked to the driver's side of the truck and leaned inside of it so that the upper half of her body was inside the truck. *Id.* at 353–54. After Petitioner leaned in, Otstot saw "a little bit of wrestling, a little bit of kind of like fighting and . . . flipping around and hands flailing everywhere." *Id.* at 354. Then, the gun went off, and the wrestling ceased. *Id.* at 355.

Petitioner testified at trial. She recounted that on the evening of August 7, 2010, Beckner left the house around 11:00 p.m. or 11:30 p.m. *Id.* at 417. She fell asleep, and when she woke up early in the morning, she noticed Beckner was not home yet. *Id.* at 417–18. She called him several times and eventually talked to him on the phone. *Id.* at 418–19. She could hear a female voice in the background. *Id.* at 419. She testified that she was "hurt" but that he had cheated on her in the past. *Id.* at 420–21. At some point, when she was on the phone with Beckner, Petitioner could hear Beckner and Tuzzolini arguing. *Id.* at 427. Then, Tuzzolini started making threats toward Petitioner. *Id.* at 428. In response to these threats, Petitioner got a gun. *Id.* at 428–29.

When Beckner and Tuzzolini pulled into the driveway, Petitioner walked outside and saw Beckner arguing with Tuzzolini in the truck. *Id.* at 430. Tuzzolini was "grabbing onto his shirt and lunging at his shoulders." *Id.* After unsuccessfully trying to open the

5

passenger's side door, Petitioner walked to the driver's side door of the truck. *Id.* at 434. Beckner exited the truck, and Petitioner and Tuzzolini started arguing. *Id.* Tuzzolino "was on her knees in the center of the truck." *Id.* at 434. Tuzzolini started lunging at Petitioner's face with what Petitioner thought was a knife,[3] and the gun discharged as Petitioner was "[t]ussling" with Tuzzolini. and "blocking [Tuzzolini's] fists." *Id.* at 438–39. Petitioner testified that the gun fired when "part of [Tuzzolini's] body hit [Petitioner's] hand and it twisted." *Id.* at 440.

## II.   LEGAL STANDARDS

### a.   Section 2254 Standard

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA may be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

3 Petitioner later testified that a phone case was found in her driveway and speculated that is what Tuzzolino may have had in her hand. Respondent's Ex. 2, Vol. III at 451. A crime scene investigator also testified that she found a black cell phone case on the front center floorboard of the truck. *Id.* at 191.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . . ."). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's

7

application of clearly established federal law is objectively unreasonable," as "an unreasonable application is different from an incorrect one." *Id.* at 694.  As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The State may contest "the presumption by showing that the

unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he shows "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner shows prejudice by proving that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the

constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

### b. **Ineffective Assistance of Counsel Standard**

Petitioner brings three claims for ineffective assistance of trial counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687. The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## III.   ANALYSIS

Petitioner raises three claims of ineffective assistance of counsel in her federal petition. Because the state postconviction court decision denying relief on each of these claims is neither contrary to nor an unreasonable application of clearly established federal law, the Court denies Petitioner's petition.

### a.  Ground One

11

Petitioner argues that her trial counsel rendered ineffective assistance of counsel for waiving the jury instruction on the lesser included offense of manslaughter and that trial counsel's waiver caused Petitioner irreparable prejudice. Doc. 5 at 6. She contends that "had the jury been instructed on the lesser [included offense of manslaughter], there is a reasonable probability that the jury would have found [Petitioner] guilty of [the] lesser offense based on the information and evidence presented at trial." *Id.* In her supporting memorandum, Petitioner argues that trial counsel's performance was deficient because he failed to know the law applicable to Petitioner's case and that "[p]rejudice [is] established, as the jury was prevented from considering the manslaughter instruction, exposing [Petitioner] to a second-degree murder conviction and sentence of life, which she received." Doc. 41 at 28, 33. Petitioner contends that had counsel not waived the instruction, the trial court would have instructed the jury on manslaughter and that there is a reasonable probability that the jury would have found her guilty of manslaughter rather than second-degree murder. Per Petitioner, she would have then received a lesser sentence.

At trial, counsel confirmed that he was "not going to go for a manslaughter [charge] as a lesser [included offense]" because "essentially 10/20/Life is the same result . . . for [manslaughter or second-degree murder]." Respondent's Ex., Vol. III at 359. Then, during the sentencing hearing, Petitioner's trial counsel moved for a new trial on

12

the ground that he had failed to request a jury instruction on manslaughter. *Id.* at 310–12. Trial counsel asserted that he had decided not to request the instruction because he mistakenly believed that Florida's "10-20-Life" statute applied to manslaughter, and therefore incorrectly believed that the court could impose the same sentence for either a manslaughter conviction or a second-degree murder conviction *Id.* The "10-20-Life" statute requires courts to impose a minimum sentence of 10 years, 20 years, 25 years, or life for certain felony convictions involving the use of a weapon. § 775.087, Fla. Stat.

Petitioner raised this claim in her amended Rule 3.850 motion in the postconviction court. Respondent's Ex. 9 at 30–33. In defending her conviction and sentence, the State argued that: (1) the claim "is procedurally barred as a claim that could have been raised on direct appeal" through a motion for new trial;  and (2) even assuming that trial counsel was deficient, Petitioner "has not shown that [the] instruction on manslaughter would have made any difference." Respondent's Ex. 11 at 12–14. The State contended that Petitioner failed to demonstrate prejudice under *Strickland* because (a) considering the evidence, no reasonable jury would have found manslaughter, and (b) the result of the trial would not have been different, as the evidence supported Petitioner's ill will, hatred, spite and evil intent toward Ms. Tuzzolino and therefore supported a conviction for second-degree murder. *Id.* at 14–17.

The state postconviction court denied Petitioner's claim:

> In claim 1 Defendant argued that trial counsel was ineffective for waiving the manslaughter jury instruction. The State argued that the issue was preserved for direct appeal as trial counsel filed a motion for New Trial arguing that the instruction should have been given. The State also argues that the evidence did not support a conviction for Manslaughter and therefore prejudice has not been established. . . . After review of the State's arguments, citations, and attachments, attached herein, the Court agrees.

Respondent's Ex. 12. The state appellate court affirmed the state postconviction court's denial of the amended Rule 3.850 motion per curiam without a written opinion. Respondent's Ex. 16. Petitioner raised this claim again in her federal petition. Doc. 5 at 5. As an initial matter, this claim is not procedurally barred as a claim that could have been raised on direct appeal. "Florida requires that ineffective assistance claims generally be raised on collateral review pursuant to Florida Rule of Criminal Procedure 3.850." *Sullivan v. Sec'y, Fla. Dep't of Corr.*, 837 F.3d 1195, 1199 (11th Cir. 2016) (citing *Smith v. State*, 998 So.2d 516, 522 (Fla. 2008)). Indeed, contrary to Respondent's argument, both cases cited by Respondent stand for the proposition that ineffective assistance claims *are* appropriate issues for collateral review, rather than direct appeal. *See Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983) (concluding that all of the issues brought by appellant could have been raised on direct appeal and were therefore precluded from the Court's consideration by collateral review, *except* for appellant's claim of ineffective assistance of counsel and one other claim); *Rodriguez v. State*, 919 So.

14

2d 1252, 1262–87 (Fla. 2005) (analyzing numerous ineffective assistance claims, affirming the trial court's denial of postconviction relief, and denying habeas relief). Moreover, Petitioner raised this claim on direct appeal, and the State argued at that time that the claim should be addressed during postconviction proceedings in a Rule 3.850 motion, rather than on direct appeal. Respondent's Ex. 3 at 14–16; Respondent's Ex. 4 at 3–7.

Turning to the merits of the claim, Petitioner has failed to show that the state postconviction courts' denial of this claim was contrary to, or an unreasonable application of, *Strickland*'s prejudice component. In Florida, manslaughter is a necessarily lesser-included offense of second-degree murder. *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 689 (11th Cir. 2005). Mistakenly believing that the 10-20-Life provision of the Florida Statutes applied to manslaughter convictions, Petitioner's trial counsel waived the lesser included jury instruction for manslaughter. Respondent's Ex. 2, Vol. I, at 101, 310–1. Even assuming that trial counsel's failure to request a manslaughter instruction was deficient, Petitioner has failed to show prejudice. *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) ("Because a petitioner's failure to establish either deficient performance or prejudice is fatal to a *Strickland* claim, we need not address both *Strickland* prongs if the petitioner fails to satisfy either one of them.").

15

Petitioner's claim is too speculative to establish prejudice as a result of trial counsel's waiver of the manslaughter instruction. *See Santiago v. Sec'y, Fla. Dep't of Corr.*, 472 F. App'x 888, 888–89 (11th Cir. 2012) (holding that the state court did not unreasonably apply *Strickland* when it denied a claim of ineffective assistance where "the jury would not have been permitted to convict [the defendant] of the lesser included offenses because it had concluded that the evidence established that he was guilty of the greater offenses"); *Sanders v. State*, 946 So.2d 953, 956 (Fla. 2006) (holding that, under *Strickland*, "a defendant cannot, as a matter of law, demonstrate prejudice by relying on the possibility of a jury pardon" through conviction of a lesser offense when the jury has convicted the defendant of the greater offense). Petitioner cannot show that, but for his counsel's deficient performance, the result of the proceedings would have been different, much less that the state court's determination was unreasonable in this regard. Any assertions that Petitioner would have been convicted of the lesser included offense of manslaughter, as opposed to the greater offense second-degree murder, are pure speculation—"speculation both that the state trial could would have decided to instruct the jury on the lesser included offense and that the jury, if instructed on the lesser included offense, would have convicted on it instead of the higher offense." *Harris v. Crosby*, 151 F. App'x 736, 738 (11th Cir. 2005). That speculation is insufficient to undermine confidence in the outcome of Petitioner's trial. *Id.*

16

Petitioner argues that prejudice is established because "[h]ad the jury had the opportunity to consider the manslaughter instruction in [Petitioner's] case, there is a substantial probability, based on the evidence that they would have convicted [Petitioner] of the lesser included [offense] of manslaughter." Doc. 41 at 33. But the jury necessarily found (as evidenced by its guilty verdict) that the evidence showed beyond a reasonable doubt that Petitioner committed second-degree murder. If the jury believed that Petitioner was not guilty of second-degree murder, they were required to acquit her. The jury was instructed that if "you do return a verdict of guilty, it should be for the highest offense which has been proved beyond a reasonable doubt," Respondent's Ex. 2, Vol. III at 538, and that "[i]f you in your deliberations conclude that no offense has been proven beyond a reasonable doubt, then of course your verdict must be one of not guilty," Respondent's Ex. 2, Vol. III at 538–39. The jury is presumed to have complied with this instruction. *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions."); *Strickland*, 466 U.S. at 693–94 (explaining that a reviewing court should presume that the jury acted according to law).

Trial counsel's failure to request instructions for the lesser offense of manslaughter did not prejudice Petitioner because the jury found Petitioner guilty of second-degree murder based upon sufficient evidence in the record. *Magnotti v. Sec'y for*

17

*Dep't of Corr.*, 222 F. App'x 934, 940 (11th Cir. 2007) (explaining that the argument that a jury would have convicted a defendant on a lesser offense had it been given the instructions on such an offense, is not conclusive where the jury properly convicted him of the greater offense based upon the evidence presented at trial); *see also Strickland*, 466 U.S. at 493–94. For example, the State presented eyewitness testimony that Petitioner walked out of her house, pointed the gun into the truck, and fired it, without any physical struggle. Respondent's Ex. 2, Vol. I at 134–36. That testimony along with other evidence properly supported the jury's guilty verdict. At bottom, Petitioner's prejudice argument implicitly rests on a nullification prospect.

Petitioner therefore has not proved that the state postconviction court's denial of this claim was contrary to or unreasonable application of *Strickland*. Accordingly, Petitioner is not entitled to relief on Ground One.

### b. <u>Ground Two</u>

Petitioner contends that trial counsel was ineffective in failing to prepare for the penalty phase of the trial. Doc. 5 at 7. She alleges that counsel failed to "call a single witness to testify on [her] behalf"; failed to investigate her "background," "mental health issues," or "other mitigating factors"; and failed to interview her family, friends, and co-workers. *Id.*

Petitioner raised this claim in her initial Rule 3.850 motion. Respondent's Ex. 7 at 5–6. Petitioner alleged that: (1) her six children could have testified to "circumstances in the home that may have contributed to the incident that resulted in [Petitioner's] charge of Second Degree Murder"; (2) "Danny Beckner was available and willing to testify as to [Petitioner's] character and the particulars that may have [led] to the crime [Petitioner] was convicted of"; and (3) "[t]here were many family members, friends, and members of the community who were available and willing to testify on [Petitioner's] behalf to offer mitigating circumstances." *Id.* She further alleged that counsel never investigated her "background[,]. . .mental health issues[,] or . . . lack of criminal history." *Id.*, at 6. The state postconviction court dismissed Ground Two with leave to amend, finding that the claim was "insufficiently pled" because Petitioner "failed to indicate which mitigating factors should have been proven." Respondent's Ex. 8.

In her amended Rule 3.850 motion, Petitioner failed to correct the pleading deficiencies in Ground Two and alleged the identical claim raised in Ground Two of the initial Rule 3.850 motion. Respondent's Ex. 9 at 33–34. In its order on Petitioner's amended Rule 3.850 motion, the state postconviction court denied the claim because Petitioner "failed to indicate, with specificity, which Fla. Stat. 921.0026 mitigating factors trial counsel failed to present." Respondent's Ex. 10. The state appellate court affirmed the denial of Petitioner's amended Rule 3.850 motion per curiam without a written opinion. Respondent's Ex. 16.

19

In her habeas petition, Petitioner raises Ground Two again, contending that trial counsel was ineffective for failing to present mitigating evidence at the sentencing phase of trial. Doc. 5 at 7. Respondent argues that "Petitioner's failure to exhaust all of her state remedies renders her claim procedurally defaulted for purposes of federal habeas review." Doc. 13 at 17–18. Respondent contends that the state postconviction court dismissed Ground Two for being deficiently pleaded after giving Petitioner a chance to amend her Rule 3.850 motion, Respondent's Exs. 10, 13, and that Petitioner's failure to amend her claim renders it abandoned. Doc. 13 at 16–17. Moreover, Respondent argues, Petitioner has not shown "cause" and "prejudice" required to escape the preclusive effect of the procedural default. *Id.* at 18.

"Federal habeas review of a petitioner's claim is typically precluded when the petitioner procedurally defaulted on or failed to exhaust the claim in state court. Procedural bar occurs when a petitioner's failure to comply with state procedures provides an 'independent and adequate' basis for the state court's decision." *Pope*, 680 F.3d at 1284 (citation omitted). *Id.* A Florida state court's "dismissal of a post-conviction claim for facial insufficiency constitutes—at least for purposes of the procedural default analysis—a ruling 'on the merits' that is not barred" from federal habeas review. *Id.* at 1286. "A failure to exhaust occurs, in turn, when a petitioner has not 'fairly present[ed]' every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Id.* at 1284 (quoting *Mason v. Allen*,

20

605 F.3d 1114, 1119 (11th Cir. 2010)). "The exhaustion requirement is satisfied when a habeas petition presents the federal claim to the appropriate state court, thereby 'afford[ing] the state courts a meaningful opportunity to consider [the] allegations of legal error.'" *Id.* at 1286 (alteration in original) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)).

Here, Petitioner's claim is properly before the Court: it is not procedurally barred, and the exhaustion requirement is satisfied. The state postconviction court dismissed Ground Two for being deficiently pleaded. Respondent's Exs. 10, 13. This is a ruling on the merits that is proper for federal review. *Pope*, 680 F.3d at 1285–86; *Boyd v. Comm., Ala. Dep't of Corr.*, 697 F.3d 1320, 1331 (11th Cir. 2012); *Borden v. Allen*, 646 F.3d 785, 812–15 (11th Cir. 2011). Further, Petitioner has sufficiently exhausted her claim in state court where she presented the same Ground Two failure-to-mitigate argument to the state postconviction court that she does in her federal petition now. Respondent's Exs. 9, 15; Doc. 5 at 7; *see Pope*, 680 F.3d at 1286–87 (concluding that the petitioner exhausted her failure-to-mitigate claim where the petitioner's "federal habeas petition raised the exact same legal issue that was presented to the state court," "despite variations in the factual allegations urged in its support" (citation and punctuation omitted)). Accordingly, Ground Two is entitled to a review on the merits.

Florida Statute Section 921.0026 enumerates a list of potential mitigating circumstances that may be considered in calculating a sentence for a felony offense.

Petitioner never identified mitigating circumstances in her initial Rule 3.850 motion, Respondent's Ex. 7 at 5–6; in her amended Rule 3.850 motion, Respondent's Ex. 9 at 33–34; or in her motion for rehearing, Respondent's Ex. 13 at 3. Although she indicated that her children, Danny Beckner, and other family members and friends were willing to testify regarding "mitigating circumstances," she failed to identify any mitigating circumstances with specificity. Respondent's Ex. 9 at 33. And to the extent that she alleged that counsel failed to investigate her "mental health issues," she failed to identify any mental health issue. Finally, her claim that counsel failed to investigate her "lack of criminal history" at sentencing is belied by the record. Mr. Bantner informed the trial court that Petitioner did not "have any real criminal history to speak of outside of this - - this one occurrence" which was "as isolated an incident as could occur. . . ." Respondent's Ex. 1, Vol. II at 313–14.

The state courts' denial of this claim was not an unreasonable application of *Strickland*'s prejudice component because Petitioner failed to identify mitigating circumstances that trial counsel could have used to argue for a lesser sentence, and failed to demonstrate a reasonable probability of a lesser sentence had mitigating circumstances been presented to the trial court. *Borden*, 646 F.3d at 822; *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit."); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints

22

of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."). Accordingly, Ground Two warrants no relief.

###   c.  <u>Ground Three</u>

Petitioner contends that trial counsel was ineffective "for failing to object to [a] defense witness being placed on the stand wearing [an] orange county jail uniform." Doc. 5 at 8. Brian Otstot was Petitioner's neighbor and was called as a witness on behalf of Petitioner at trial. *Id*. Otstot testified that he witnessed the shooting. Respondent's Ex. 2, Vol. II at 351–57. In her habeas petition, Petitioner argues that "[t]he fact that [Mr. Otstot] was in his orange jail uniform was enough to impact and influence the jury to [view the] witness as less credible due to the fact that he was in custody for some alleged criminal activity." Doc. 5 at 8.

Petitioner raised this claim in state court as Ground Three of her amended Rule 3.850 motion. Respondent's Ex. 9 at 34–35. In its order denying the claim, the state postconviction court stated:

> In claim 3 Defendant argued that trial counsel was ineffective for having a defense witness testify in his jail uniform. The State argued that prejudice could not be established based on the evidence presented during the State's case in chief. After review of the State's arguments, citations, and attachments, attached herein, the Court agrees.

Respondent's Ex. 12. The state appellate court affirmed per curiam without written opinion. Respondent's Ex. 16.

The state postconviction court's ruling on the prejudice prong was not an objectively unreasonable application of clearly established law. To establish prejudice in this circumstance, Petitioner must demonstrate a reasonable probability that the outcome of the trial would have been different had Mr. Otstot worn civilian clothes rather than his jail uniform. *See Kormondy v. Sec'y, Fla. Dep't of Corr.*, 688 F.3d 1244, 1274 (11th Cir. 2012) ("The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." (quotation omitted)). Because the Court can identify no basis upon which it could conclude that the outcome of the trial would have been different had Mr. Otstot testified in civilian clothing, it certainly cannot conclude that the state court's determination of this same conclusion was an unreasonable one.

Initially, Petitioner's claim of prejudice is vague and conclusory. Although Petitioner concludes that the jury believed Mr. Otstot was "less credible" because they saw him wearing a jail uniform, Doc. 5 at 9, she does not explain how Mr. Otstot's testimony was crucial to her defense or how his perceived lack of credibility caused the jury to convict. Vague and conclusory allegations of prejudice are insufficient to warrant

24

federal habeas relief. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient." (quotation omitted)).

Even if Petitioner's claim were not conclusory, it would not warrant relief. Petitioner has not identified a Supreme Court case, and the Court knows of none, which requires an attorney for a criminal defendant to furnish civilian clothes to prisoner witnesses.[4] It is "not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by th[e Supreme] Court," *Knowles*, 556 U.S. at 122 (quotation omitted). In sum, Petitioner has failed to demonstrate that the state courts' denial of this claim was either contrary to *Strickland*'s prejudice prong. Accordingly, Ground Three warrants no relief.

## IV.    CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* To obtain a COA, a petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues

---

[4] It is well established that requiring a criminal *defendant* to appear at trial in jail clothing violates the Fourteenth Amendment. *See United States v. Johnson*, 634 F. App'x. 227, 229 (11th Cir. 2015) ("It is a Fourteenth Amendment violation to compel a criminal defendant to stand trial before a jury in identifiable prison garb."). In this case, however, Otstot was a witness rather than the defendant.

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003); 28 U.S.C. § 2253(c)(2). Petitioner has not made that showing. And because Petitioner is not entitled to a COA, she is also not entitled to appeal in forma pauperis.

Accordingly, it is therefore **ORDERED** that Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 5) is **DENIED**. The Clerk is **DIRECTED** to enter judgment against Petitioner and to **CLOSE** this case.

**ORDERED** in Tampa, Florida on March 31, 2021.

Kathryn Kimball Mizelle
United States District Judge

Copies to: Counsel of Record